MARGARET O. ROSS ET AL. V. CINCINNATI, L. & N. RY.

1. RAILROAD CANNOT SUBJECT PROPERTY OWNERS TO LEGAL NUISANCES.

A steam railroad company has no right or authority, in the operation of its road, to subject adjacent property owners to any kind of a nuisance, cognizable by law, for its own convenience or advantage.

2. NOISE, ETC., FROM OPERATION OF RAILROAD NOT LEGAL NUISANCE, WHEN.

On the state of facts in this case noise, smoke and offensive vapors which naturally arise from and are necessarily incident to the proper operation of a steam railroad at its terminals, do not constitute a nuisance cognizable by law, such as will warrant a court of equity in granting an injunction against its continuance on complaint of abutting residence owners, where there is no charge of negligence against the company, or that it acted in bad faith and failed to exercise due care in locating its terminals; the annoyances arising in such a case are *damnum absque injuria*.

3. INJUNCTION NOT ISSUED WHEN COMPLAINANT'S RIGHTS IN DOUBT.

Where there is doubt as to whether or not certain acts constitute a nuisance cognizable by law, or an illegal trespass upon the rights of complainant, an injunction will not be granted until the rights of complainant are ascertained and defined in an action at law.

**C. E. Tenney,** for plaintiffs.

**Maxwell & Ramsey,** for defendant.

**JELKE, J.**

The plaintiffs herein, Margaret O. Ross, Ella R. Tenney, L. J. Goldman and S. M. McKenzie, are the owners of lots and lands abutting on the north side of Beecher street, Walnut Hills, between Gilbert avenue and the right of way of the Cincinnati, Lebanon & Northern Railway Company, the defendant herein.

The defendant railway company having secured from the city of Cincinnati permission to cross Stanton avenue, has built a large number of tracks on the property immediately in the rear of plaintiff's property, that is, adjoining it on the north on the low ground, being between thirty and forty feet below the rear of complainants' premises at the east running out to almost nothing where it crosses Stanton avenue. These tracks are provided and used by the defendant railway company as terminals for the receipt and discharge of freight, most of this being of a heavy nature and in car-load quantities.

It is alleged that the backing and switching of cars upon these tracks by reason of the noise, smoke, and noisome vapors coming from the locomotives, is an intolerable nuisance to complainants' residences

on Beecher street, their property being improved by dwellings of a beautiful and substantial character. It is admitted, however, that the railway company is not negligent in the operation of its locomotives and in the handling and switching of its cars, and that it does not create any more noise, smoke, soot, or offensive vapors than is necessarily incident to the proper use of its trains and for the purposes for which said terminals were built.

There is no doubt if that which the defendant railway company is doing is an illegal trespass upon the property rights and comfort of plaintiffs, that a court of equity will enjoin the same. It is contended, however, on behalf of the defendant company, that unfortunate as this may be and offensive and as much of a nuisance as it may be to complainants, it is nevertheless unavoidable, and incidental to the transaction of its railway business and the performance and doing those things as a *quasi* public corporation, for which it is chartered and enfranchised to do, and that the things complained of are *damnum absque injuria.*

A large number of cases have been cited by counsel for plaintiff, with the leaders which bring out the principles underlying the parties' respective rights:

*Baltimore & P. Ry.* v. *Baptist Church,* 108 U. S. 317 [2 Sup. Ct. Rep. 719; 27 L. Ed. 739]; *Chicago & G. W. Ry.* v. *Methodist E. Church,* 102 Fed. Rep. 85; both of which cases were considered by this court in the case of *Cincinnati Connecting Belt Ry.* v. *Burski,* 26 O. C. C. 486.

No case exactly like the case at bar has been cited to us. We begin with the statement that the railway company has no right to subject an adjacent property owner to any kind of a nuisance, be it of noise, or dirt, sufficient to be cognizable at law, for its own convenience, interest. or advantage.

It is recognized that the operation of a main line of a railroad, either in a public street or on its own private right of way is more or less of a nuisance to all the abutting and adjacent property which it passes, but for reasons of public necessity, the courts have refused to recognize such nuisance as being a nuisance, cognizable by the law. It is said that the law must shut its eyes to the wrong, such as it may be, perpetrated upon these abutting property owners, else the building, maintenance and operation of railroads would be impossible, and that hence whatever such property owners may suffer, is said to be *damnum absque injuria.*

The United States Supreme Court in the case of *Baltimore & P. Ry.* v. *Baptist Church, supra,* compelled the railroad company to re-

move its roundhouse, and shops from the vicinity of the Fifth Baptist Church, for the reason that the railroad company could maintain its roundhouse and shops some place else, and it made no difference at what inconvenience or disadvantage to the company. The same was true of the hydrant and station involved in *Chicago & G. W. Ry.* v. *Methodist E. Church, supra.* There was no uncertainty in the court's expression as to the hydrant, but the court was not so clear as to the legal status of the passenger station, but inasmuch as the station and hydrant were joined and confused, the court enjoined the whole matter. The question then herein involved is, are the terminals of a railway, which are necessary to properly serve the public, for the service of which the railway company is chartered and permitted to operate, different in character, before the law, from its main tracks?

Of course it is clear that a railroad would not be a railroad, and so far as serving the public is concerned, would be an empty and vain thing, without terminals reasonably convenient and accessible for the shipping public. One can also well conceive the main line of a railroad with three, four or five parallel tracks operating so many trains, as to actually be as much or more of an annoyance than a terminal yard.

In the consideration of this case, the court assumes because there could be no object in the railroad or anybody doing otherwise, that the site of these terminals has been selected in good faith and with due consideration for the receiving and shipping public. It is what the public needs and requires, that furnishes whatever saving grace there may be, if any, to the railroad. The railroad on its own account, receives no consideration. The court will not listen to complainants' saying that these terminals might just as well be located a mile further out in the country or a half mile further into the city, because the same questions could there arise and the naked legal question as to such terminals must at some place be met.

In the absence of all charges of negligence or want of due diligence in the selection of a location or bad faith, we incline to the view that these terminals must be put on the same footing as the main tracks of a railroad, and that the nuisance and annoyance they may inflict, must be said to be *damnum absque injuria.*

Further, there are other elements involved in this case which lead us to somewhat resolve our doubts against the complainants. The relative topographical situation of complainants' and defendants' property happens to be a little fortunate. It makes the nuisance not quite so bad as it might be, on account of the elevation of the sites of these handsome residences and their distance away on their spacious lots, so that

Hamilton County.

if they have a separate property right which is injured and entitled to protection, we would be compelled practically to hold that the same is true of nearly all the property within a quarter of a mile radius of these terminals, which would make the establishment of terminals and the convenience of unloading and receiving freight practically prohibitive, and be a denial to the public of one great, modern utility.

There is another ground which would justify the court in denying an injunction, and that is, the court being in doubt as to the legal quality of the acts done by the defendant railway company and complained of by complainants, that until the exact character of the same is established in an action at law, a court of equity should be slow to intervene by injunction.

Injunction in cases of nuisance is permitted on account of the continuous nature of the acts which are legal trespasses and to prevent a multiplicity of suits. There being a good deal of doubt as to whether the things done here are in fact a nuisance, cognizable at law, or an illegal trespass upon the rights of complainants, the court is inclined to think that it should withhold an injunction until these rights are ascertained and defined in an action at law.

An injunction will therefore be denied.

**Swing** and **Giffen, JJ.,** concur.