Court of Common Pleas of Huron County.

JOSEPH L. WEISHANN V. HENRY KEMPER, MAUDIE KEMPER AND SARAH KEMPER. *

Decided November 18, 1928.

*Earl S. Miller,* for plaintiff.
*Don J. Young,* for defendants.

IRVING CARPENTER, J.

In 1915 defendant Henry Kemper, then nineteen years of age, purchased the land described in the petition as the east half of Lot 345 same being five rods front on west side of Marshall street and eight rods deep. On this lot was a residence which that defendant with his parents and the other members of their family occupied as a dwelling, and in it his parents still live. They had rented and occupied the property a year or so before he bought it. During the war that defendant conveyed the property to his mother, defendant Sarah Kemper, and the title still stands in her name, although Henry Kemper says he is in fact the owner of it and has full control of it.

Next to that property on the north is another lot four rods front and the same depth, on it is an old dwelling

---

* On appeal the Court of Appeals on the same evidence reached the same conclusions of law and fact as the trial court May 14, 1928,. Motion to certify was overruled by the Supreme Court June 20, 1928, Ohio Law Bulletin and Reporter, June 25, 1928.

house which was occupied as a residence until July, 1926, when defendants Henry Kemper and Maudie Kemper purchased it.

Next north of that property is another similar in size, which was purchased by plaintiff about thirty-seven years ago when he erected a dwelling upon it, and there he and his wife have lived ever since and reared their family.

The neighborhood for over two blocks in every direction has always been exclusively a residential section, very largely occupied by families that have lived there many years, one lady across the street having resided there fifty-five years. Nor has there been in twenty-five or more years any change in this character of the locality, nor are there now any tendencies of business or industrial activities to encroach upon this residential section.

When the Kempers moved to this location, the father, Robert Kemper, was more or less engaged as an independent junk collector and the son Henry began that work about that time. This consisted in buying old iron, rags, rubber and paper, commonly called junk, and selling it to dealers. The residence lot was used as a headquarters for such collecting and later Henry began buying from such collectors in addition to his own collecting, and his stock was stored upon the home lot at times and was there sorted and broken up with hammers and hauled away to cars or other dealers. (There is no railroad contact less than two blocks from the property in question). After a time the scrap iron sometimes covered a good part of that lot, and the rags and papers were and are now stored in an old barn and shed located on the back part of the lot.

About a year ago, with the purchase of the lot to the north, Henry built a seven foot tight board fence across the middle of the new lot and to the west along the north side of it, locating the fence about eighteen inches from Weishann's line, which is also about ten feet from their kitchen porch and door. In fact this fence surrounds the back part of both lots of Kemper's, except to the front of the old Kemper lot and in the rear where the barn and shed are on the line. In this shed on the new lot he has recently installed a very large and powerful machine or

shears for cutting up the scrap iron into convenient lengths. This is operated by an electric motor. At the time of this hearing the iron which had been cut up with these shears was stacked up around the fence in piles ten to twelve feet high and many feet wide, and Henry said this was about the usual stock on hand. About three men are usually employed about the yard besides Henry and his father, who has a small shop there and does some work breaking up scrap collected by him. These men are engaged from about 7 a. m. to 5:30 p. m. and on exceptional occasions as late as 8 p. m., unloading junk from trucks as it is brought in, in sorting and cutting up and piling the iron and in reloading junk on trucks when it is hauled to the railroad.

Plaintiff by his petition complains that the noise from unloading, breaking up, piling and loading such iron, and the noise and vibration from the operation of the shears, the noisome and obnoxious odors from burning some oil or tar substances, the dust, dirt, soot and smoke that blows on his premises from the junk yards, the rats there harbored that invade his lot, and the menace of flying and falling pieces of iron upon his premises, constitute the use of the defendants' property as a junk yard a nuisance and he asks to have such use enjoined.

The testimony of the plaintiff and his wife and numerous of the Marshall street neighbors, residing within about five lots distance from the junk yard, is that the noise from the place has been very annoying to them, and especially so since the shears have been put in operation a year ago, which with the vibration they cause, and their incessant grind, is particularly annoying to all these neighbors, especially the women who are usually in their homes during the hours the shears are being operated; that often on Sundays and holidays loads of junk have been hauled in there, but the machinery is not operated then, nor is much handling of junk done on such days, but oft times there is much pounding there at night, as late as 10 and 11 o'clock. At times in the past soot and smoke have come from the burning of some substances. One of the witnesses says some of it comes from burning off the

insulation on copper wires, but this is denied by Kemper. Complaints last spring to the city officers improved this annoyance somewhat. At all times when the wind blows, dirt, and dust and iron rust from the junk yard is carried over the neighborhood and interferes very much with drying clothes, keeps porches and porch furniture dirty and even penetrates plaintiff's house. All complain that rats infest their premises constantly, but some, including the plaintiff have been able to keep them from their cellars. The plaintiff also brings into court numerous pieces of iron which he had picked up in his yard since the junk yard was extended to the adjoining premises a year ago, one quite heavy piece struck Mrs. Weishann when she was in her garden, and one small piece came through the kitchen porch and door into the kitchen. This is preventable and Kemper offers to extend his fence or put a net upon it so pieces of iron cannot get over.

The plaintiff's claim is that the junk yard is a nuisance. I think it must be conceded that a junk yard is not a nuisance *per se,* in fact when properly conducted it is a lawful and we may say a useful business. From the facts found from the evidence to exist and at some length above set forth, two questions of law are presented, the one: Is the manner in which the Kemper junk yard is conducted a nuisance? If not, then the other: Is it a nuisance in that particular location?

In general the method of conducting the business is about, such as is usually employed in that industry. A few of the annoyances such as flying pieces of iron, night and Sunday noises and activities, and the smoke and soot, might be discontinued, but the greatest annoyance, the constant noise and vibration from the shears, and the handling of scrap iron, are inseparable from the business, as are also the dirt, dust and rust, and the rats, and the general unsightliness of the place.

These things in that long established residential neighborhood present a more difficult problem.

The leading case in Ohio on the subject of nuisance of this character is that of *Eller* v. *Koehler*, 68 O. S., 51. In that case the plaintiff sought to recover damage for injury

to health and property which she alleged resulted from noise and vibration occasioned by steam hammers or drop hammers used in the factory of the defendant adjoining the property of the plaintiff. The defense was that the locality was of an industrial character, a railroad track very near the property of plaintiff and defendant, on which many trains were moved, causing noise and vibration even greater than that caused by the plant of the defendant, and, while the court found this defense well taken, it did at some length discuss the subject of nuisance and the nature of the locality as determining that question and used the following pertinent language:

"Only conduct which is a nuisance *per se* is at all times. and under all circumstances a nuisance, although there are some lawful trades and modes of using property, which, by reason of unavoidable noxiousness and offensiveness, are *prima facie* nuisances. But the fact that a certain business is *prima facie* a nuisance does not relieve the complainant of the necessity of proving that the business is in fact a nuisance and that he has sustained an actual and substantial damage therefrom. It scarcely needs to be pointed out that the circumstances of contiguity will enter largely into such an inquiry, along with other facts and circumstances. This rule applies to the full extent in cases in which damages are claimed from noise or vibration of machinery, in the conduct of a perfectly lawful business, in an ordinarily careful manner, on premises adjoining those of the complainant. 'In determining the question of nuisance from noise of vibration reference is always to be had to the locality, the nature of the trade or use of the property producing it, the time during which it exists, the intensity of the noise and the effects produced thereby. No definite rule can be given that is applicable to every given case, as each case must necessarily stand by itself, and be determined by a jury with reference to the circumstances peculiar to itself,' etc. 2 Wood on Nuisance, Sections 638, 639. Whether it be a case of injury to real property, or a case of personal annoyance or inconvenience, or of interference with the comfortable enjoyment of one's property, or whether the question be as to the existence of a nuisance, or as to the extent of the alleged injury, or as to whether the defendant's act caused the injury, and though the inquiry be before a chancellor or a jury, the continuity of the alleged nuisance to the plaintiff's property and the nature of the vicinage is always a pertinent circumstance to be consid-

ered. The matter of locality may be of such or little weight in arriving at a conclusion, nevertheless the parties have the right to have the controversy heard and determined with all the light that locality may throw upon it. The mutual interests of urban populations require this. For example, if one unnecessarily erects, maintains and operates a noisy, smoky machine shop, or rolling mill, in the midst of a section of a city or town already wholly given up to residences, possibly many of them of elaborate design and great cost, there would be less excuse for the offender in so using his own property, than if he had chosen a place which had been wholly or in part given up to trade and manufactures. All that can be required of men who engage in lawful business is that they shall regard the fitness of locality. In the residence sections of a city, business of no kind is desirable or welcome. On the other hand one who becomes a resident of a trading or manufacturing neighborhood, or who remains while in the march of events a residence district gradually becomes a trading or manufacturing neighborhood, should be held bound to submit to the ordinary annoyances, discomforts and injuries which are fairly incidental to the reasonable and general conduct of such business in his chosen neighborhood. The true rule would be that any discomfort or injury beyond this would be actionable; anything up to that point would not be actionable."

Cited in the opinion of the Eller case is that of *Columbus Gas Co.* v. *Freeland,* 12 O. S., 392, which, while turning largely upon the charge of the court, does discuss at length the subject of nuisances arising from business enterprises, and speaking of odor and smoke from a gas works, which was under discussion, the court said that the amount of annoyance to constitute a nuisance cannot be precisely determined; that the standard must be notions of comfort entertained by persons of *ordinary sensibilities* and not those of fanciful and fastidious tastes, nor by those not sensible to any annoyance.

In still an earlier case that of *Cooper* v. *Hall,* 5 Ohio, 320, nuisance in the use of one's own premises, is defined as signifying anything that causes hurt, inconvenience, annoyance or damage, but it is said that there must be damage in fact and not what some one may imagine.

In numerous other cases the courts of Ohio have discussed at considerable length different business as nuis-

ances, and in all such cases the principles laid down in Eller v. Koehler, supra, are cited as controlling. In only one such case is a junk yard the subject of the court's consideration and that appears in Grundstein v. City of Ashland, 25 N. P. (N. S.), 493. There the premises intended to be used as a junk yard had one lot located on a residence street and another to the rear of it, which extended into a manufacturing locality, with a railroad in close proximity. The court there did enjoin the carrying on of the usual operations incident to the junk business on the lot fronting on the residence street for the reason that it was inconsistent with the locality, but refused the injunction as to the lot in the rear for the reason that it was consistent with that particular locality.

McClung v. Coal Co., 6 C. D., 243, 18 C. C., 864. The operation of coke ovens which threw off large amounts of smoke and gas upon residences was enjoined, and this notwithstanding it resulted in practically destruction of a large and valuable plant of the defendant.

Munk v. Sanitary Works, 5 O. D., 548, 7 N. P., 542. A garbage plant located near a residence was abated as a nuisance.

Shaw v. Forging Co., 10 O. D., 107, 7 N. P., 254. The court in its opinion has gathered together a large number of authorities on this proposition and lays down the rule that the operation of drop hammers in a factory in a residence neighborhood result in a noise productive of discomfort and annoyance in persons of ordinary sensibilities and enjoined the same.

Beiser v. Grever, 11 O. D., 444, 8 N. P., 398. Drop hammers causing noise and vibration and blow pipes emitting smoke and soot upon plaintiff's residence was abated as a nuisance.

Amling v. Lang, 22 O. D., 61. Manufacturer of monuments and tombstones with noisy machinery and emitting dust in a residential locality was enjoined.

Stall v. Hillman, 30 O. D., 339, 16 N. P. (N. S.), 410. The defendants were carrying on a sawmill and chair factory in a neighborhood which had previously been used exclusively for residential purposes. The machinery consisting of saws, planer, etc., operated by a gasoline engine

produced unusual noises and on authority of *Eller* v. *Koehler, supra,* the operations were enjoined as a nuisance in that locality.

The attention of the court has been challenged to the very recent case of *Powell* v. *Craig,* 113 O. S., 445, wherein the Supreme Court holds that a gasoline filling station in a residential community was not a nuisance. In reaching that conclusion the court reasons that the nature of construction used for the station could not be regarded as offensive to the community, and the contention that the hazard of explosion and fire which was alleged was not well taken, and the further fact that the patrons of the station going and coming was not such as would constitute a nuisance to the residents of the neighborhood. The case at bar is easily distinguished from that case in that it does not appear from the evidence here that this particular locality has any occasion to use the junk yard in a commercial way as they might a filing station, or a mercantile enterprise retailing commodities in common use, for in that class the court places the filling station.

This defendant says he employs from three to five men, some of whom spend part time on the truck as collectors, others operate the shears and do the yard work. Apparently none of them reside in this immediate locality. Were this an industry giving employment to any considerable number of persons in the immediate neighborhood its location there might be more easily justified than it is, for apparently there is no relation whatever between the business there conducted and the locality, or the people living in it.

The foregoing constitutes a brief summary of most of the similar Ohio cases in which the relation of the community and the particular business as a nuisance are considered. There are some other cases in which the injunction has been refused, but in all such the refusal has been based squarely upon the fact that the locality was already a manufacturing one, as was done in the case of *Eller* v. *Koehler, supra,* and largely on authority of that case. A type of such case is that of *Gau* v. *Ley,* 28 C. D., 235, 27 C. C. (N. S.), 1.

Outside Ohio there are a large number of cases consid-

ering this question of nuisance in all its phases, but I do not seek to here discuss any of them except two which I esteem very forceful authority. The Supreme Court of the United States has given expression to its notions in *Baltimore & Potomas R. R. Co.* v. *Fifth Baptist Church,* 108 U. S., 317; 27 L. Ed., 729.

Action for damage by church against railway company for injuries resulting to the church by erection and use of engine house and repair shop next to the church. Mr. Justice Field in opinion of the court said:

"If, as asserted by the defendant, the noise, smoke and odors, which are the cause of the discomfort and annoyance to the plaintiff, are no more than must necessarily arise from the nature of the business carried on with an engine house and workshop as ordinarily constructed, then the engine house and work shop should be so remodeled and changed in their structure as to prevent, if that be possible, the nuisance complained of; and if that be not possible, they should be removed to some other place where, by their use, the plaintiff would not be thus annoyed and disturbed in the enjoyment of its property. There are many places in the city, sufficiently distant from the church to avoid all cause of complaint, and yet sufficiently near the station of the company to answer its purposes."

The other case is that of *Krecker* v. *Camden Coke Co.,* 82 N. J. Eq., 373; 88 Atl., 955.

This was a suit to enjoin a coke oven as a nuisance to the residence and business of the plaintiff. Many precedents are cited in the opinion and the Chancellor adopted the statement of the principle by that court in *Cleveland* v. *Citizens Gas Light Co.,* 20 N. J. Eq., 201, as follows:

"Any business, however lawful, which causes annoyances that materially interfere with the ordinary comfort, physically, of human existence, is a nuisance that should be restrained; and smoke, noise, and bad odors, even when not injurious to health, may render a dwelling so uncomfortable as to drive from it any one not compelled by poverty to remain. Unpleasant odors, from the very constitution of our nature, render us uncomfortable, and, when continued or repeated, make life uncomfortable. To live comfortably is the chief and most reasonable object of men in acquiring property as the means of attaining it; and any interference with our neighbor in the comfortable enjoyment of life is a wrong which the law

will protect." And in describing the criterion for determining whether or not a particular use of property is a nuisance, he further said: 'The discomforts must be physical, not such as depend upon taste or imagination. But whatever is offensive physically to the senses, and by such offensiveness makes life uncomfortable, is a nuisance; and it is not the less so because there may be persons whose habits and occupations have brought them to endure the same annoyances without discomfort. Other persons or classes of persons whose senses have not been so hardened, and who, by their education and habits of life, retain the sensitiveness of their natural organization, are entitled to enjoy life in comfort as they are constituted. The law knows no distinction of classes, and will protect any citizen, or class of citizens, from wrongs and grievances that might perhaps be borne by others without suffering or much inconvenience. This, then, is the question before me: Whether the proposed works of the defendants would produce such annoyance as would render such families, composed of women and children, as well as men, uncomfortable, not whether men accustomed to follow their occupations in places where they are surrounded, and unavoidably, by much that is offensive may not be so accustomed to odors of like nature as not to be annoyed by these."

In another part of the opinion in *Kroecker* v. *Camden Coke Co., supra,* the other contention of defendants here is well disposed of, that is that the plaintiff has suffered this business to develop for such length of time that it is now inequitable for him to seek to enjoin it. From the story of the development of the defendant's business which began about in 1915, twelve years ago, and the attitude of the neighborhood tolerating it so long, I am reminded of the fable of the camel and the tent, when the Arab stirred to sympathy for his beast suffering in the cold night air of the desert allowed him to put his head inside the tent, then his shoulders, then a hump and so on until the camel had pre-empted the tent and the Arab was forced to move out.

This action was started within a few months after the junk yard spread to the premises adjoining that of the plaintiff and the installation of the shears, although previous to that time much of the noise and annoyance complained of had afflicted the whole neighborhood, for some little time, although perhaps not as immediate to the plaintiff as has been the case since this extension. Length

of time as a defense in action of this character must depend upon prescription, 20 R. C. L., 499. Such limitation would not arise in Ohio inside the twenty-one year period and that time had not nearly expired. *Cleveland* v. *Standard Bag Co.*, 72 O. S., 324.

In view of this overwhelming authority this court is driven to the conclusion that this junk yard in this neighborhood is such a nuisance as calls for the remedy of injunction here sought.

The order will be that within thirty days from the date of this entry the defendant cease to bring in and deposit in this location scrap iron and that within sixty days he cease the breaking up and cutting up of such iron and within four months remove from the premises the accumulation of iron and from that time cease to use his premises for any business in the collection and handling of iron. This extension is granted that defendant may have opportunity to locate his business in a neighborhood better suited to its character and effect the change necessary to clear up his stock on hand.

Bond for appeal may be fixed in the sum of $500.

Common Pleas Court of Montgomery County.

REV. VINCENT SLAVINAS V. JOSEPH AMBROSE ET AL.

*McConnoughey & Shea*, for plaintiff.
*Egan & Delscamp*, for defendant.