## Jacob D. Heft's Appeal.

### Estate of John F. Jackson.

Possession, on the part of a mortgagee of personal property, capable of actual, corporeal occupation, is essential to the validity of his lien as against other creditors.

The death of the debtor gives to general creditors the right to deny the validity of such a mortgage when possession has not been taken in the debtor's lifetime.

By the death of the debtor his personal estate in possession passes into the custody of the law for administration; and the mortgagee has no right to undertake to administer any part of it for the satisfaction of his own debt.

But where the mortgagee in good faith intervenes, and in administration of the estate sells the pledge and settles an account of the proceeds, he is entitled to commissions, although he must pay interest for the proceeds in the meantime appropriated and used in his business, in the belief that they belong to himself.

(Argued January 14, 1887. Decided March 21, 1887.)

July Term, 1886, No. 194, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Appeal from a decree of the Orphans' Court of Philadelphia County in the Estate of John F. Jackson, deceased. Affirmed with modifications.

Cited in Carracher's Estate, 27 Pa. Co. Ct. 238.

NOTE.—A chattel mortgage is not valid in Pennsylvania against creditors of the mortgagor without a change of possession (Welsh v. Bekey, 1 Penr. & W. 57; Modes's Estate, 76 Pa. 502; Widdall v. Garsed, 125 Pa. 358, 17 Atl. 418); unless such change is impossible (Fry v. Miller, 45 Pa. 441; Bismark Bldg. & L. Asso. v. Bolster, 92 Pa. 123); such as the mortgage of a legacy (Campbell's Estate, 13 Pa. Co. Ct. 35, 2 Pa. Dist. R. 665). Though a change was practicable, and none takes place, the mortgage is good between the parties or as against purchasers with notice. Coble v. Nonemaker, 78 Pa. 501.

The facts as they appeared at the audit of the first account of Jacob D. Heft, administrator of John F. Jackson, deceased, before Ashman, J., were as follows:

The decedent died May 16, 1882, intestate, and letters of administration on his estate were granted to the accountant May 23, 1882. His estate was insolvent.

At the audit the following claims were presented:

E. K. Lemont & Son, on note and bank accounts, with interest to date of death, $533; Delp & Groff, on book account, with interest to date of death, $164.59.

These creditors claimed to come in on an equal footing as creditors of the estate with the accountant, who was also a creditor, and to whose claim of $2,525, with interest, the proceeds of the sale of the personal estate of the decedent, amounting to $2,530, had been appropriated by the accountant.

The decedent on September 7, 1879, borrowed from the claimant $2,000 and with the money purchased the stock and fixtures of a livery stable. Upon the day of the purchase he executed and delivered to the claimant, on collateral security, a bill of sale of the articles purchased. Decedent went into the possession of the premises and carried on business there in his own name until his death. The claimant afterwards loaned him the further sum of $525, for which the decedent gave his promissory note. The latter was still unpaid at the time of his death. On the day the decedent died, the claimant entered upon the premises by virtue of the bill of sale; and after continuing the business as his own for several months, he sold out for $2,530. The actual receipts of the business during his charge over the expenditures for conducting it showed a gain of $37.07.

The auditing judge, in his adjudication, said:

"The accountant, as creditor, certainly had the right at any time during the life of the debtor to take possession of the property which was the subject of the bill of sale; and the right would not seem to have been taken away by the death of the latter; if the instrument had been a mortgage, which is a conditional sale, and had provided for the delivery of the property within a given time, it would have bound even creditors if possession had been taken under it before process by creditors had been taken out. Boyle v. Rankin, 22 Pa. 171.

"The accountant insists that he is not to be charged with their

value as assets of the decedent's estate, but sets up a title in himself. The auditing judge is of opinion that this title would prevail as against volunteers; and that the accountant might retain the goods or their proceeds in an amount sufficient to satisfy his debts, when the contending parties are legatees or next of kin. But he is entitled to no preference over other creditors. He permitted the decedent to act as owner and to obtain credit upon the faith of an ostensible ownership. He will therefore be charged with the proceeds of sale, and will prorate with the claimants in the fund for distribution. See Boynton v. Isaacs, 10 W. N. C. 190; Martin v. Mathiot, 14 Serg. & R. 214, 16 Am. Dec. 491; Crawford v. Davis, 99 Pa. 576.

"The accountant showed that certain book debts which remained open on the books of the decedent were uncollectible, and that efforts had been made to secure their payment. The demand to surcharge him with their amount and to disallow his commission as administrator is refused.

"The account, vouchers having been produced for its credits, exhibited a balance due by the estate to the accountant of $75.93.

"Against which must be surcharged commissions improperly claimed on $2,530, which sum was charged in the debits, but were retained by accountant in payment of his own claim, and was not carried into the totals."

Exceptions to the adjudication were filed by the accountant because it surcharged the accountant with the sum realized from the property pledged to him by the decedent for his debt, viz., $2,530, and because it disallowed commissions upon the sum of $2,530, although charging the accountant with said sum.

Upon dismissing the exceptions and confirming the account, PENROSE, J., delivered the following opinion:

It is conceded that the bill of sale under which the accountant claims was given to secure moneys loaned by him to the decedent; his rights, therefore, were simply those of a mortgagee, the form of the transaction being immaterial. Spering's Appeal, 60 Pa. 199.

That possession on the part of a mortgagee is essential to the validity of his lien as against other creditors where the subject of the mortgage is personal property capable of actual, corporeal occupation, is too well established to require the citation of au-

thority; and that the death of the debtor gives to general credit-ors the right to deny the validity of such a mortgage, when possession has not been taken in his lifetime, was expressly decided in Kater v. Steinruck, 40 Pa. 501.

"By the death of the mortgagor," it was there said, "his personal estate in possession passed into the custody of the law for administration, and the mortgagee had no right to undertake to administer any part of it for the satisfaction of his own debt. Even if there is enough to satisfy all the creditors, he cannot decide that question, but must leave it to the decision of the orphans' court. If there is not enough, his mortgage without possession became void as to creditors by the death of his debtor, for then the law took hold of the estate for the benefit of all. If there is enough, he cannot suffer much by waiting the due course of administration."

In that case an action of trover by the administrator against the mortgagee was sustained, and it was held that the debt intended to be secured by the mortgage could not be set off. The fact that the default, which, under the terms of the mortgage, first gave the right to take possession, did not occur until after the mortgagor's death, is not material. The point decided was that unless the lien is complete at the death of the debtor, priority cannot be claimed over other general creditors. See also Merchants' Bank v. Shouse, 102 Pa. 488.

It is true that in Collins's Appeal, 107 Pa. 590, 52 Am. Rep. 479, it was held (CLARK, J., dissenting) that the principle did not apply in favor of a decedent's general creditors in the case of a pledge of an intangible interest, incapable of delivery or manual occupancy, or of an expectancy to come into existence after the contract of pledge is made, and when the personal effort of the pledgeor is necessary, both to its subsequent existence and its actual maintenance. But this was not because the creditors of the decedent had only the rights of the general creditors of a living debtor, but simply because of the character of the pledge.

The same principle was held, therefore, to apply as against execution creditors, in Wallace's Appeal, 104 Pa. 559.

"The general rule," it was said in that case, "that possession of the thing pledged must be taken by the pledgee, to make the pledge valid against the creditors of the pledgeor, was recognized in Collins's Appeal, and the pledge of an interest in expectancy,

or of an intangible interest, under certain circumstances, was considered an exception."

"Whether," it was added, "in Pennsylvania there can be any other exception need not now be determined." Certainly the present case furnishes no ground for another exception, and nothing short of the complete overthrow of the general principle itself can sustain the claim of priority on the part of this mort gagee.

There is nothing in the doctrine of McClintock's Appeal, 29 Pa. 360, or of Yorks's Appeal, 110 Pa. 69, 1 Cent. Rep. 354, 659, 1 Atl. 162, 2 Atl. 65, which, as we understand those cases, affects the question. Yorks's Appeal simply decides that credit-ors of a decedent do not become the equitable owners of the per-sonal estate of their debtor so as to prevent the plea of the stat-ute of limitations as against their debts; and there is no sug-gestion that while the debt continues the personal estate is not held, in the regular course of administration, subject to the duty of the administrator to see to its payment. To this extent the administrator is a trustee for the general creditors, although his obligation to them ceases, of course, when the debt is paid or when it has lost, by operation of law, the right of enforcement. The act of assembly declares that after payment of certain pre-ferred debts all others shall come in on a footing of equality. Nothing less than a lien perfected during the life of the debtor can give a right of priority as between general creditors.

The auditing judge has found, and the account shows, that im-mediately after selling the property covered by his bill of sale the accountant appropriated the proceeds for the payment of his own debt. In so doing he was acting in hostility to the rights of other creditors; and, so far as this portion of the estate was con-cerned, it was entirely proper to disallow his commissions as against such creditors. Greenfield's Estate, 24 Pa. 232.

The proceeds of sale, $2,530, were all received in or prior to October, 1882; and the account, which was not filed until March, 1886, contains no debit of interest. It is now asked, although the claim was not made before the auditing judge, that the ac-countant be surcharged with interest at the rate of 6 per cent. Had the money been deposited during the period preceding the filing of the account, with the other funds of the estate, the mere omission to invest or make it productive might, perhaps, have been excused, or a lower rate than 6 per cent adopted; but

as it was applied to the payment of a debt to himself, and the accountant has thus had the use of it ever since, it is clear that he is chargeable with interest at the legal rate. The adjudication will be amended by adding to the balance for distribution interest upon the above sum from October —, 1882; and with this modification the exceptions are dismissed.

The assignments of error specified the action of the court in dismissing the exceptions to the adjudication, and in decreeing (in its opinion dismissing the exceptions) that interest should be added to the balance for distribution, such balance, under the opinion, including the entire proceeds of the pledged property.

*Joseph dcF. Junkin* and *George Junkin,* for appellant.—It is respectfully submitted that the lien in this present case was complete at the time of the death of the debtor, and that the essential and controlling distinction of fact and principle between the case of Kater v. Steinruck, 40 Pa. 501, and the present one, arises from the condition that in the former case default had not taken place, and the right of possession was not perfect; whereas, in the present one default was not necessary, the pledgee's title was perfect, and he had the absolute right of possession, the pledgeor having the custody of the property only as trustee for him, and not in any sense being in legal possession of the same. See also Collins's Appeal, 107 Pa. 590, 52 Am. Rep. 479.

The disallowance of commissions to the accountant, and the surcharging him with interest upon the proceeds of the sale of the pledged property, were by way of punishment.

Unless he has done something intentionally in fraud of the estate, or by which the estate was made to suffer, he certainly was entitled to his commissions, whether or not he received as pledgee the proceeds of the pledged property.

It was not as if he had administered first and had then taken the proceeds of the pledged property and misappropriated them to his own use; but, on the contrary, after he had possession as pledgee, he voluntarily administers on the estate, and voluntarily brings before the court the entire proceeds of all of the property which was in the custody of the decedent at his death. An examination of the long account filed by him shows the greatest possible care taken by him to bring before the court, for a just

and legal distribution, every penny that could possibly be charged against him, arising out of this transaction.

It seems to us that in place of this being bad faith and in disregard of duty, it was an instance of the exercise of the highest good faith, both to the court and to the creditors of the estate.

In like manner, the charging him with the full rate of interest upon proceeds of this property was very severe and not warranted by the facts of the case. If he is to be deprived of what he supposed to belong to him, and which he took in good faith, without any intention of defrauding this estate, his loss is severe enough; and having voluntarily brought the fund into court for disposition, it is respectfully submitted that a reasonable allowance on the interest should be made to him, if the decision of the court below is to be sustained.

*Lewin W. Barringer,* for appellees.—Where moneys have been used by the accountant, commissions will not be allowed, even if the employment may have inured to the benefit of the estate. Waylan's Estate, 17 W. N. C. 376; Seguin's Appeal, 103 Pa. 143; Robinett's Appeal, 36 Pa. 174; Norris's Appeal, 71 Pa. 126.

He is chargeable with interest as compensation for such use. Norris's Appeal, 71 Pa. 123; Walthour v. Walthour, 2 Grant Cas. 102; Copely's Appeal, 82 Pa. 143.

OPINION BY MR. JUSTICE TRUNKEY:

The opinion of the learned judge of the orphans' court clearly shows that the property assigned to Heft, as security for a debt, remaining in possession of the assignor, upon his death passed into custody of the law for administration. For the reasons there given the decree, except as to commissions, must be affirmed.

Letters of administration were granted to the appellant in a week after the decedent's death. That he prudently disposed of the property is unquestioned. Nor is there anything to show that he did not believe he had a right, by virtue of the assignment, to appropriate the proceeds of the assigned property to payment of the debt which the parties to the instrument intended to secure. He was mistaken, and is liable for interest. The fund for distribution is as large as it would have been had he not claimed that the part derived from the sale of the assigned

property should apply on his debt.    Creditors have lost nothing by his mistake.

Under the circumstances, we think he should be allowed the usual compensation for his services.

Decree affirmed, with modification that the appellant be allowed the commissions claimed in the account; costs of appeal to be paid by administrator out of money of estate.