SAN PEDRO, L. A. & S. L. R. CO. v. BOARD OF EDUCATION OF SALT LAKE CITY.

No. 1800.  Decided May 27, 1907 (90 Pac. 565).

1. EMINENT DOMAIN—PROCEEDINGS—EVIDENCE—SUFFICIENCY.  In proceedings by a railroad company for the condemnation of land constituting a portion of the grounds of a public schoolhouse, evidence considered, and *held* insufficient to show that the property had been wholly destroyed for school purposes by the construction of the railroad.

2. SAME—EVIDENCE—ADMISSIBILITY.  In proceedings by a railroad to condemn land constituting a portion of the grounds of a public schoolhouse, the fact that the school authorities abandoned the use of the schoolhouse after construction of the road was not proper evidence for consideration of the jury on the issue whether the property had been destroyed for school uses.

3. SAME—INSTRUCTIONS.  In proceedings by a railroad to condemn land constituting a portion of the grounds of a public schoolhouse, there was some evidence that the school authorities after the construction of the road abandoned the use of the schoolhouse, and the court instructed that the school authorities would have the right to regard the building as wholly destroyed for school purposes, if, acting conscientiously and as reasonable men, and in view of their duty to provide educational facilities, and giving reasonable consideration to the safety of the school children, such authorities would be justified in abandoning the building, but that in the

32 Utah—20

determination of the question the jury should not consider what, if any, action the authorities had already taken with respect to the abandonment of the building. *Held,* that the instruction was erroneous, as in effect instructing the jury that, if the authorities acted conscientiously, the property might be regarded as wholly destroyed, irrespective of the facts.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Proceedings by the San Pedro, Los Angeles & Salt Lake Railroad Company against the board of education of Salt Lake City for the condemnation of land, and from the judgment for condemnation and damages plaintiff appeals.

REVERSED AND REMANDED FOR NEW TRIAL.

*C. O. Whittemore* and *Pennel Cherrington* for appellant.

*E. B. Critchlow* and *Ray Van Cott* for respondent.

FRICK, J.

The matters presented for review in this case grew out of a certain proceeding instituted by the plaintiff, the appellant in this court, against the defendant, the board of education of Salt Lake City, the respondent here, to condemn a certain strip of land. The record is quite voluminous, but the facts necessary to a comprehension of the question passed upon may be stated as follows: The respondent on the 1st day of August, 1905, owned, occupied, and used for public school purposes in the western portion of Salt Lake City a certain parcel of land .292 feet in length by 150 feet in width, on which there was situate a one-story brick school building, sixty-three by ninety feet, divided into four rooms, accommodating about forty pupils in each room. A strip of ground 43½ feet in width off the south end of the larger strip mentioned above was condemned by appellant, making the condemned strip 150 feet in length by 43½ feet wide. The strip in question was sought for the purpose of con·structing thereon a railroad, and, if deemed necessary in the future, to construct double or more tracks as the necessi-

ties of the appellant might require. The strip of ground is in the westerly, and somewhat sparsely settled, part of Salt Lake City, and the railroad in question constitutes the main line of appellant between Los Angeles and Salt Lake City, and is designed for all railroad traffic, both present and future, that the public needs may require, including local traffic to and from the smelters to the west of Salt Lake City. The railroad track as laid is 127 feet south from the south end of the school building, running east and west, and the parcel of ground on which it stands, including the condemned portion, is 248½ feet by 150 feet; the access to the building being practically the same as before the railroad was constructed. Some of the children attending school, relatively speaking, live a considerable distance from the schoolhouse; but, upon the whole, it was fairly well situated to accommodate the largest number of children living in that district, and was fairly well adapted to fill the wants of the people in that vicinity for school purposes for children from the first to the sixth grades.

The respondent at the trial contended, and now contends, that the construction and operation of a railroad, in view of the noise, the jar of the building by passing trains, the distraction of the attention of the children, and the physical dangers incident to the operation of a railroad, practically destroyed the school property for school purposes, so that it was and had to be abandoned and renders it valueless for school purposes. Upon this subject the evidence, in substance, discloses the following facts, as appears from the testimony of some of the principals and teachers testifying as experts, viz.: That several large passenger trains pass to and fro daily (the exact number is not shown). Also some freight trains pass by the school daily each way. It seems no trains passed during the school hours up to the time of trial, but such might be the case in the near future. That the passing of a train has the effect to distract the attention of the pupils from their studies, and the noise would interrupt recitations for the time being until the train had passed. That the school in such condition could not be kept

up to the required standard by the school board without extra effort on the part of both pupil and teacher, and that it was not practical to keep the school work or the results thereof up to the same standard of efficiency with the railroad as it could be done without it. Miss Frost, who was a teacher in the school in question after its location was changed, and who testified for respondent as an expert upon this subject, explains, perhaps as well as any witness what is meant by keeping up the standard grade of efficiency, as follows: "Q. What do you mean by not keeping it up to the standard? A. There is a standard required in each grade throughout the city, and allowances are not made for environment. We are judged by results, and all the things that interfere with our work reflect on the school and its management, without special consideration being given to what may have caused that. Q. So you mean to be understood, then, that you can't get as good results here as if the railroad was not there? A. That is my opinion." All the teachers and principals testify that in their judgment the operation of the railroad would interfere with the successful conduct of the school. Some say it would greatly interfere, while others say 'it would do so to a considerable extent, but all agree that they do not mean to say that the school could not be conducted with the railroad, but that it could not be so with the same degree of efficiency and not as free from danger to the children as if the railroad were not there. These teachers also testified that there are in fact other schools, some not as large and some much larger, being conducted in the city situate about the same distance from other railroad tracks as the school in question, and that as many as twenty trains a day pass some of such schools. All of these teachers insist, however, that the railroad, to some extent at least, affects the efficiency of these schools, and that the required standard can be kept up, if kept up at all, only by extra effort, by home study, and by other means. They also say that it would require extra care upon the part of the teacher to keep the children from the railroad tracks during school recess, and in going from and coming to school, but say that the danger in going and

coming is no greater in this instance than it would be in crossing a track in coming to and going from any other school, of which there are a number in the city. It also appears that the track in question is about 2½ feet above the level of the school ground, while in the other schools referred to it is some feet below the level of the ground.

Upon substantially the foregoing facts in respect to the destruction of the property for school purposes, the court submitted the following question to the jury as a part of the verdict to be returned by them, viz.: "Do you find from the evidence that the property of the defendant not taken has been wholly destroyed for school purposes?" The answer was, "Yes." The court also gave instruction to the jury in respect to the method to be pursued by them in ascertaining the value of the property taken, and the damages to the property not taken, directing the jury to find from the whole evidence whether the property not taken was wholly destroyed or only damaged for school purposes, and, if wholly destroyed for said purposes, then the amount to be allowed by them would be the whole value of the property not taken, less the amount that they should find its value to be for other than school purposes, and, if they found it to be damaged and not wholly destroyed for school purposes, then to find the amount of such damages and allow them, and, in addition to either amount, also the value of the strip actually taken. The jury in accordance with these instructions found the value of the strip taken to be $250 and the damages to the part not taken $7,750. Just how the jury arrived at this result is not quite clear, but the reasonable theory to be deduced from the evidence is that they found the value of the part and parcel not taken to be worth from $2,000 to $2,500 for other purposes, and deducted that amount from what they found the building and land to be worth for school purposes before the railroad was constructed, and the balance constitutes their findings as damages. Upon this verdict and findings the court entered a decree condemning the property and judgment for the amount found by the jury, namely $8,000, and computed

legal interest on said sum from the date of taking said strip, August 1, 1905.

Appellant filed a motion for a new trial, which was overruled, and it appeals from the judgment in respect to the allowance of damages in the amount above stated.

Numerous errors are assigned which need not be specifically set forth, and we shall notice such only as are deemed of importance. One of the errors urged upon us is that the verdict is not sustained by sufficient evidence. If there is any substantial evidence in this record in support of the verdict and judgment, then it is not within the province of this court to determine which way it preponderates and the verdict and judgment must stand, unless erroneous upon other grounds. If there is no substantial evidence in support of any one or more of the material elements upon which the verdict and judgment rest, then it becomes merely a question of law for this court to determine, and we cannot shirk the responsibility of looking into the evidence to ascertain whether there is any substantial evidence in support of all the essential facts necessary to support the judgment by simply assuming that all questions of fact are for the jury and the trial court to pass upon. We have found no difficulty in this case in arriving at the conclusion that the findings of the jury that the property is wholly destroyed for school purposes is not supported by any direct evidence. In fact, what direct evidence there is upon the subject is directly to the contrary. The difficulty in this case lies in determining what constitutes a total destruction of the property for school purposes, and in determining whether there is any evidence in the record from which this ultimate fact may be inferred or deduced. We have arrived at a conclusion, after much reflection and with some hesitancy, in view of the complications presented.

It is argued that the evidence is clearly to the effect that the operation of a railroad located and constructed so near the school house is a constant menace and source of danger to the physical safety of the children; that the noise and jarring incident to the passing of trains distracts the attention of the pupils from their lessons, and breaks into the recitations,

so that in a large measure it affects, if not entirely destroys, the very objects and purposes of the school; that in this respect it affects both teachers and pupils, and this in a degree destroys the efficiency of the school, and that to destroy the efficiency of the school to any considerable extent is tantamount to a total destruction thereof for school purposes. We cannot yield assent to the last proposition as applicable to the appellant, and we believe that it can be demonstrated that the conclusion is not sound. In the state of modern progress and advancement in city life, there is scarcely any enterprise or calling that is not to some extent affected by some other calling or enterprise. Whether or not the effect is always destructive of efficiency may be an open question. We may assume, however, that the efficiency in any given calling is affected or that it will require extra care or increased effort to keep up normal results. Such interferences, however, are not a total destruction of the normal efficiency. This fact is illustrated by what evidence there is upon the subject of impaired efficiency in this case. Respondent introduced in evidence the records, covering a certain period of time, showing the failures of promotion from grade to grade of many different schools in Salt Lake City, and also proved the general average of failures in all the schools of the city. From this it appears that the general average of failures of promotions in the entire city school system amounted to 32 1-2 per cent., while in one of the schools situate near a railroad, and presumably affected thereby, the percentage of failures was only twenty-five per cent. While all this may not be controlling and may not conclusively demonstrate that the railroad may not cause a total destruction of property for school purposes, it does conclusively demonstrate that there are many factors to be considered in determining the causes leading to a lack of efficiency in a school, and that the estimates given in this case upon the subject regarding the effect of the railroad upon the efficiency of school work by teachers are, to say the least, very unreliable, and hardly amount to that degree of proof necessary to support a finding that the property is wholly destroyed for school purposes by the ordinary operation of a railroad

near a schoolhouse. Only slight reflection is sufficient to demonstrate that such is the fact. To authorize a finding that the property is wholly destroyed for school purposes, the evidence must make it appear that it is impractical to continue the school by reason of the construction and operation of the railroad. By this is not meant that it must be shown to be utterly impossible to conduct a school, but what is meant is that it must appear that; after reasonable effort and diligence upon the part of the board of education and the teachers to avoid the physical dangers and to overcome the interference from the operation of the trains, it is no longer practical to conduct the school. So long as these things may be overcome by reasonable effort, the efficiency and safety of the school is only impaired, and not wholly destroyed. Until that destruction is shown, appellant cannot legally be required to pay for the full value of the property, but can be required only to make good the damages caused by its interference of the conduct of the school. The mere fact that it may not be easy to determine just what the damages are in case the property is not wholly destroyed does not alter the legal principle that appellant cannot be required to do more than to make compensation for any damage caused by it. As the evidence now stands, it establishes the fact only that the efficiency of the school has been impaired and the physical safety of the pupils threatened, without any showing that these matters by reasonable effort and diligence cannot be overcome. This falls short of establishing the fact that the property has been wholly destroyed for school purposes. If the railroad were like a saw mill, planing mill, or stamp mill, or any business enterprise where the noise is continuous, or dust or deleterious odors arise therefrom, the case would be different. The mere ordinary operation of a railroad, however, cannot be assumed to amount to a nuisance as applied to the ordinary school. If it were a hospital with sick and nervous people exposed to the jarring and noise of the train during the whole twenty-four hours of the day and night, the case would likewise be different. Neither do we wish to be understood that the construction and operation of a railroad under certain

circumstances may not amount to a total destruction of property for school purposes; nor do we hold that such is impossible in this instance. But what we do hold is that the evidence in this case, as it now stands, is insufficient to support a finding and judgment that the property in question has been wholly destroyed for school purposes. It seems to us that in this case all the influences affecting detrimentally the results, as observed in the pupils attending public schools, is attempted to be attributed to the presence of the railroad. This cannot be done, for the reason that the records of the teachers clearly show that great allowance must be made for the inherent propensities, diligence, natural ability, and other elements that are ever present and in some degree affect the result of school work. The teacher, too, has a large share, no doubt, in either the success or failure of a school. When these factors are considered, as they must be, and of which all men as well as courts and juries must assume knowledge, the evidence in this case becomes of less force still. True the jury found that the property in question was wholly destroyed for school purposes by the railroad alone, but we think it is clear from the entire record that this finding is not based on the evidence alone, but no doubt to a large extent upon an instruction given by the court which was excepted to by appellant and is assigned as error, which we will now discuss.

The instruction is as follows: "The court instructs you that the defendant would have the right to regard the Uintah school building as wholly destroyed for school purposes if the defendant, acting conscientiously and as reasonable and prudent men having in mind and giving due weight to the subject of taxation and the burden upon the owners of property, and likewise considering and giving due weight to the defendant's duty to provide reasonable educational facilities to children living in the neighborhood where the Uintah school is located, and taking into consideration the standard of efficiency maintained by the defendant throughout its entire school system, and likewise giving due and reasonable consideration to the safety of the school children, when, to repeat, the defendant, so acting, would be justified in abandoning

the use of said Uintah school building for school purposes,
and expending the public funds in the purchase of another
site and the erection of another building for school purposes.
In the determination of this question the court instructs you
that the defendant, the school board, would not have the right
to consider the fact that part of such money would be de-
rived from the railroad company or from any other source
than that of taxation or other public sources and the sale
upon the market of the abandoned school property.   The court
further instructs you that you have no right to consider as
bearing on this question what, if any, action the school board
has already taken with respect to the abandonment of the
Uintah school building."   This instruction is not based upon
any principle of law involved, nor was it applicable to any
issue or matter arising in the case.   True, there was some
evidence that the respondent had abandoned the schoolhouse
and no school had been held therein after appellant con-
structed its railroad.   The court, however, correctly held, as
appears from the instruction itself, that this evidence was not
proper to be considered by the jury in arriving at their ver-
dict; that is, the fact that respondent had in fact abandoned
the schoolhouse was not to be considered by them.   If this
was right, and we think it was clearly so, we fail to see how
it was proper to tell the jury that the respondent could, under
the conditions named in the instruction, abandon the school-
house for school purposes.   This was, in effect, telling the
jury that, if the respondent acted conscientiously in the mat-
ter and for the reasons enumerated in the instruction whether
the property was in fact wholly destroyed for school pur-
poses or not, it might be abandoned and thus deemed wholly
destroyed for school purposes.    This instruction might be
proper enough if the board of education were being assailed
for dereliction of duty.   As against such an attack, such a
defense would be complete.   As against their constituents, the
members of the board promised only to apply their ability
and best judgment; but as against the appellant this is not
the test. Unless the appellant by some act has, after reasonable
effort and diligence, made it impractical to further conduct

the school, then it has not wholly destroyed the property for school purposes. Whether it has done so must be determined from the sworn testimony of witnesses, or other competent evidence, and not from what the members of the board of education thought or did in abandoning the school, however conscientious they may have acted in the premises. The several members of the board might have testified to facts upon that question, subject to cross-examination, and if from their testimony, if competent, the jury had arrived at such a conclusion, the case would be different. To tell the jury, however, that the board might abandon the property under the conditions named, or under any condition other than the total destruction of the property for school purposes in fact, and without telling them that they must find the fact to exist independently of any conclusion the board may have arrived at, was, we think, clearly prejudicial error. What the court told the jury about disregarding the past act of abandonment did not at all mend the matter. If it was improper for the jury to consider the past act, it was likewise improper for them to consider abandonment at all, except, perhaps, when based upon actual destruction of the property for school purposes when found as a fact. To have so limited the instruction it would have been useless, and therefore should not have been given at all, except, in case that evidence had been admitted showing abandonment, to tell them that they could not consider that fact in determining the question of whether the property was destroyed for school purposes or not. In view, therefore, of the lack of evidence upon the question of the total destruction of the property for school purposes, the jury evidently seized upon this instruction and based their findings upon it, and hence their verdict for damages for a total destruction of the property. In view of the evidence, no other conclusion is possible. In saying this we do not want to be understood as attempting to lay down any hard and fast rule in cases like this. To do so is impracticable, if not impossible. It is the absence of any rule or guide that makes the case so diffcult. However difficult it may be, a finding of the total destruction for school or any other purpose must have as a basis some

substantial evidence rising above mere conjecture. Just what conditions will be necessary to destroy property for school purposes is a matter that must, in the nature of things, be left, to some extent at least, to the discretion of the triers of fact, but such discretion must be based upon some substantial evidence. If it is not, then it means merely a transfer of property or money from one person to another without evidence, and hence without the sanction of the law. This, if this judgment is permitted to stand under the evidence in this case, would result in doing just that.

There are several errors assigned to the admission of evidence and to the propounding of certain questions to certain of respondent's witnesses. We have carefully considered all of those. The court fully and fairly instructed the jury on the measure of damages in such cases, and applied the rule correctly. On the matter of permitting respondent to prove the value of the schoolhouse apart from the land, no other method was practical in this case in view that the property had no market value for school purposes.

In view, therefore, that the jury evidently were strongly impressed by the instruction referred to, and, from the state of the evidence, evidently based, to some extent at least, their finding and verdict thereon, and in view that the instruction, as we view it at least, permits the conduct of the board of education to be considered as evidence, the judgment cannot be permitted to stand.

The judgment therefore is reversed, and the cause remanded for a new trial in accordance with the views expressed in this opinion, appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.